Good morning. Again, Your Honor. Frank Sproul is appearing for the petitioner. This is the case that I thought was yesterday, and you said it was Thursday. At least we addressed it yesterday. Right. We addressed it a little bit yesterday. Today is Wednesday. Okay. But you're back. But those inaccuracies are not central to your argument. Don't believe the material. If I could initially address the applicability of the Child Status Protection Act, which is one of the issues. Maybe you can answer the question I asked you yesterday. What happened when you did go to the BIA and you said this is an urgent matter? My client is going to be 21 in something like three months. And would you send it back to the immigration judge? The board acted with incredible expedition, as far as I can tell. I've never seen the board act that quickly on anything. They sent it back. There were two months left. If the IJ had acted, your client would have solved his problems. And nothing happened for four months, and then the IJ said it's too late. What happened? It's murky, Your Honor. And I think the short answer is shame on us. And I know that we tried to push the immigration court to calendar the matter. It fell through the cracks. I mean, the court would have done it if they had been pushed properly. I mean, it's not altogether clear. And the only mea culpa I can give is that I wasn't directly involved. But that does demonstrate the efficacy of the Child Status Protection Act, that basically he was prejudiced through the vagaries of the immigration court calendar. I don't know why it didn't get calendar before his 21st birthday. The fact is it didn't. The BIA did act with great expeditiousness. The immigration court did not. I mean, it's regrettable, but I don't have a satisfactory answer for you except that it didn't happen. You know, it's a little like we regularly get notices of appeal or petitions for review in immigration cases that arrive 31 days after. The people lose their rights. If it had arrived the day before, they might have won their cases. I mean, there's a certain arbitrariness to the judicial system. But your client, had that case been heard when it should have been, he would have had his relief. And now it depends entirely on whether you can persuade us that the Child Protection Act, which has a clear retroactivity date, somehow applies to your client. That's where I am, Judge, yes. Again, in terms of what happened on the ground, as it were, again, I don't have a satisfactory answer. It probably doesn't matter. It was just curiosity, because the fact is that it didn't happen. Right. And there we are. Well, the point I made, in terms of the – I don't believe the retroactivity of the Child Status Protection Act is all that clear. It certainly says only if a final determination has not been made. That's the effective date language of the Act. We're here. The matter, in terms of the adjustment, eligibility, is not final. Per force, we're here. It's on a petition for review. So I would argue that it is, in fact, applicable. If this case were to be remanded, he would have a very straightforward adjustment. Again, I think the rule of leniency would compel that we construe this in favor of retroactivity. Again, I don't think we have a final determination. What was at issue before the BIA was his silence and his eligibility for retroactivity. Now, where do you find the definition of final determination? The very appended Exhibit A. No, no. Definition. Do you have a definition as to what that means? A final determination? Yeah. No, no. Not just what you think it means. Is there some authority you can point to that tells us whether the term final determination means the final administrative determination or the final legal determination? Off the top of my head, I can't give you exact sites, but I think there's abundant case law that has always said that an immigration proceeding is not final, provided it's still on direct appellate review, and that's where we are. But the INS and their regulations generally refer to the appellate procedure when they mean something besides the agency determination, don't they? Haven't they done that in other cases? Sure. But, I mean, in this particular case, the adjustment itself and the language of the effective date language refers to adjustment of status, not just the visa. So in this case, the adjustment of status was being adjudicated by the immigration court. So by a logical necessity, this final determination is all part of the immigration slash deportation proceedings and the case is on direct appeal. So my argument would be we do not have a final determination and, consequently, the Child Status Protection Act is directly relevant. Has any court, appellate court in the country, found the final determination to be in accordance with your argument here? I mean, I think in deportation, the finality of a deportation order, I think it's settled law that as long as the case is on direct appellate review, you do not have a final order of deportation. Now, built up in a deportationist case, case is whatever relief you're seeking. So, I mean, just in terms of – But you don't have a case from a surrogate court. No. In my opinion, it's settled law that as long as the case is on direct appellate review, it's not a final order of deportation. And any applications for relief which are wedded to that deportation order, it's not final. And, again, this is clearly an immediate – I'm not even sure that's correct. As I recall, when there was a final deportation order, even when there was a petition for review, it was only because of an agreement or an understanding we worked out that the deportation couldn't be implemented. It was considered a final order, even though a petition was pending, and the person could be deported. It took either a stay or an agreement by the agency. Well, under prior law, Judge, I don't think that's correct. Under prior law, the stay was automatic. And under current law, you must request to stay contemporaneous with your petition for review. And under current law, even if an alien is deported, the appeal goes forward, so it's not a final order. That doesn't mean it wasn't a final order. It was a final order. But, anyway, what we need or what would help is if there were a case that said final determination means either the final agency determination or final determination means the completion of the judicial process. I understand that, Your Honor. Obviously, the statute was passed January 23, 2002. There is no case. Well, it's not the only time the words determination or final determination have been used in this country. Its terms could have been construed in the past. Don't worry about that, Judge. But, again, my position is that it's in terms of how do we construe it if it's ambiguous? Should doubts and ambiguities be resolved in favor of the alien, especially when this is an act that was clearly meant to ameliorate the harshness of an alien simply turning 21 and losing all relief? So I would ask this Court to simply remand to allow him to seek the ameliorative relief that Congress intended through the Child Status Protection Act.  Good morning. May it please the Court. I'm David Dauenheimer on behalf of the respondent in this matter. To respond to the murky issue as to what occurred after the Board remanded the case to the Immigration Court, all we can do is look at the record that we have on review. And what that record shows us is that, yes, the Board did, in fact, remand the case in 12 days after receiving the motion to reopen. They properly construed it as a motion to remand, remanded it to the Immigration Court. The Court thereafter, seven days later, sent a notice to Petitioner's Counsel informing him of the date of the hearing. The date of the hearing was set for 5 September, 96. Was that in time? Excuse me? Was that in time to save the Petitioner? No, 5 September, 96 is outside. He turned 21. Why would they have set it for that when it was sent back to them, particularly to say that it could be done before he turned 21? Well, the order from the Board was, if you look at the order from the Board, it remands the case for review of his application for adjustment. However, it doesn't mention anything about the exigent circumstances. So the Immigration Court wasn't put on notice by that. They sent out a notice, nevertheless, seven days later, setting the date for September of 96. That's after 21 May, where he turns 21. Is there then a note in the record that counsel sought to move the case up? Did he file a motion to expedite the hearing? No, there's nothing in the record that shows anything was done. But you say the counsel should have taken affirmative steps to send word to the IJ saying, we need to have this hearing before such-and-such a date. Yes, Your Honor. I believe it's incumbent upon the Petitioner's counsel to at least bring the issue to the Immigration Court's attention. And the counsel himself suggested that if it had been brought to the Court's attention, the Court would have heard the case in a more expeditious manner. I heard him say he didn't know what actually happened. That's the way I heard the argument. Is it your position that the Immigration Court responsible for scheduling this hearing was unaware of the time-sensitive nature of the application? I believe the record supports that conclusion, because if you look at the remand order from the Board, it doesn't contain any information that would have clued the Immigration Court into the exigent circumstances. And then they weren't provided with anything from Petitioner's counsel. And, in fact, when Petitioner with his counsel showed up on 5 September 1996, they set the hearing over to February 1997. There was no discussion regarding how the Court failed to set the hearing in time, and now my client's been prejudiced because he's aged out of the Child Status Protection Act. The application to the BIA set forth the emergent nature of the requested relief? That's correct, Your Honor. And it was granted on that basis? It was. . . I believe so. They granted his request to have the case remanded. They construed his motion to reopen as a motion to remand and remanded it to the Immigration Court. But they didn't give any reasons why they didn't accept the remand? That's correct, Your Honor. In any event, during that hearing on 5 September 1996, counsel agreed to an even later hearing date in February of 1997. The question was posed by the Court if there was anything further, and neither counsel for the INS nor for the petitioner had anything further to say. The Immigration Court in fiscal year 1996 received over 232,000 cases and completed over 229,000 cases throughout the Immigration courts of the United States. The courts simply can't, without some notice from the petitioner, be held to have heard this case in any different fashion than how they proceeded. I guess the next question for the Court is whether. . . The meaning of final determination. What cases are there that interpret the term final determination either as final agency determination or judicial determination, leaving aside for the moment Ortiz v. Meisner? With regard to the Child Status Protection Act, I was unable to find any cases that actually. . . With regard to any other INS cases. I would argue that this Court's cases determining what a final order is are analogous and would apply. Let's ask which cases other than Ortiz v. Meisner. Cases such as Narayan v. INS or K-Law v. INS. Are they all in your brief? Narayan is cited in the brief, Your Honor. I'm not positive if K-Law is cited in the brief or not. Both cases stand for the idea that a final deportation order is. . . A deportation order is final when the board affirms a decision from the immigration judge. In fact, that's in line with the Immigration and Nationality Act, Section 101. Is the term they're construing there final immigration order or final determination? The term there is a final order of deportation. Okay. Well, that wasn't my question. My question was what cases construe the language used here, which isn't final order of determination, as I recall. The language used here is only if a final determination has not been made. Now, what cases construe final determination? With respect to the child's passport. No, with respect to anything under immigration law. I'm not aware of any, Your Honor. So this would be the first time we would be construing that term? At least. . . I mean, the first time any appellate court would be construing the term. With respect to the Child Status Protection Act. No, no, the term. . . I'm having difficulty making my questions clear. The word final determination, as opposed to final order of deportation, in immigration law, anywhere, whatever act it's in, whatever purpose, do you know of any case in an appellate court that construes the term final determination with respect to immigration law? I'm not aware of any. I do not believe that was cited in any of the briefs before this court either, Your Honor. Okay. However, it's entirely possible that that term has been construed with respect to other acts or other sections of immigration law. My argument is that in construing that term as it applies in the Child Status Protection Act, the court can look towards the definition of what a final order of deportation is, and that's defined within the act. Well, you may have a different policy for what you want to call a final order of deportation. So that means when you can pick them up and deport them, right? When you have a final order of deportation, you're free to deport them. Correct, Your Honor. Which is not necessarily the same purpose involved in an act which says we're going to give you the benefit of an ameliorative provision, as long as it's not retroactive for people whose cases are over. Right, Your Honor. But I think the language Congress used clearly intended to place a limit upon the retroactivity of the act. Well, they've used a term you say hasn't ever been construed by an appellate court. They certainly could have been a lot clearer. They could have said final agency determination or final determination by the attorney general. Yes, Your Honor. They could be clearer in the way that they drafted the particular provision. However, reading the provision in the context of the Immigration and Nationality Act and the precedent of the courts, it would appear that a final determination. But you're telling me there is no precedent of the court on what final determination means? The precedent of the courts with regard to final orders of deportation and the methods that have been used in. . . So Congress thought about this problem and said, well, we know what the term final order of deportation means when we're talking about an entirely different type of problem. So if we use the word final, obviously it's going to be clear to everybody that the courts tell us what that term means. Even though we're going to use a term that's never been construed. It's unclear why they chose to use the term final determination. However, it does not appear that they intended the effects of the Child Status Protection Act to go beyond a case such as this where. . . What do you think the reason was in this case? Excuse me? What do you think the reason that they wanted to cut it off at the agency level was? They were trying to do something good for people for a change. They were trying to give people a benefit. And they were trying to say children can stay with their parents. Relatives can stay with their children. They can stay. We're not going to deport them. And if their proceeding starts before they're 21 and it takes us a long time to get to it, we're going to change the rules so they can stay. And then we're going to give this benefit to people whose cases aren't all over. So they were trying to do something to see that there's a little fairness in our immigration policy. And they said, but of course, like the Supreme Court in Habeas cases, they don't want it to go back 50 years. . . Or to cases that are all concluded, have finished their whole run through their total first direct appeals. But why would they want to cut it off before people had a chance to get to court? I believe in the context of the immigration law, one could be applying for adjustment of status and not have an also pending asylum claim or some other area. The adjustment application could have been denied by the immigration court. And it made sense probably for them to pick a point in time where the agency has made a final determination, just as if they had made a final deportation order, and allow the immigration service to move forward with their cases from that point, rather than have the provisions of the act apply to individuals who may have had other claims before the court, pending before an appellate court or thereafter. It's not clear from the legislation or from the act itself. However, I would argue that it's analogous to the term final order of deportation and should be limited so. Thank you, counsel. Thank you, Your Honor. If there's nothing further from the court, that's all I have. Very quickly, I, too, have enormous solicitude for the caseload of the immigration judges, but I would point out on my motion to reopen to the BIA on page one, I stated his birthday, May 21st, 1996. But the BIA did that, but the immigration judge didn't. Right. I'm saying, but in terms of would the immigration court have been put on notice that there was extreme time sensitivity, given the blinding speed with which the BIA reopened the case and in the fact that the moving papers. Well, you do better to worry about the. Finally. Are you in agreement with your opponent that there is no case in the court of appeals that construes the term final determination in the immigration context? In my understanding, no, Your Honor. It would be the first time that Congress wrote a statute that was not a model of clarity. My question was, do you know whether there's a case? Your answer is neither of you know. Okay. In terms of final order, we do. Final determination, we do not. And, again, I believe it is an ameliorative statute and the canon that doubts and ambiguity should be resolved in favor of an alien and in favor of an ameliorative statute should prevail. Thank you. Thank you. I hope we are all in this together. Case is currently submitted.
judges: Reinhardt, Siler , Hawkins